UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ANTHONY FUDGE,

               Plaintiff,

    -v-                                     5:11-CV-00525

WILLIAM JONES, Deputy Sheriff, Onondaga
County; TIMOTHY HIMES, Deputy Sheriff,
Onondaga County; METZ, Officer, City of
Syracuse; FREDERICKA MENDOLIA,
Deputy Sheriff, Onondaga County; DAVID
BROWN, Officer, City of Syracuse; DARREN
MCLAUGHLIN, Deputy Sheriff, Onondaga
County; TODD SHIELDS, Deputy Sheriff,
Onondaga County; WILLIAM JUNE, Deputy
Sheriff, Onondaga County; RICHARD
MCCARRON, Sheriff Sgt, Onondaga County;
COX, Deputy Sheriff, Onondaga County;
JOEL CORDONE, Officer, City of Syracuse,

               Defendants.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

ANTHONY FUDGE
Plaintiff, Pro Se
09-B-2185
Franklin Correctional Facility
P.O. Box 10
Malone, NY 12953

ONONDAGA COUNTY DEPARTMENT OF LAW    CAROL L. RHINEHART, ESQ.
Attorneys for Onondaga County Defendants
John H. Mulroy Civic Center
421 Montgomery Street, Tenth Floor
Syracuse, NY 13202

---

[1] The caption contains erroneous spellings of "Himes," "McLaughlin," and "Cordone." It also misidentifies Metz, Brown, and Cordone—each is an officer with the City of Syracuse Police Department, not a member of the Onondaga County Sheriff's Office. The caption is amended accordingly.

CITY OF SYRACUSE LAW DEPARTMENT          SHANNON T. O'CONNOR, ESQ.
Attorneys for City of Syracuse Defendants
233 East Washington Street
300 City Hall
Syracuse, NY 13202


DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

Plaintiff Anthony Fudge ("Fudge" or "plaintiff"), proceeding pro se and in forma pauperis, filed this action against thirteen defendants pursuant to 42 U.S.C. § 1983 alleging civil rights violations stemming from his arrest on July 3, 2008, when he was apprehended after leading law enforcement officers of the City of Syracuse Police Department and Onondaga County Sheriff's Office on a dangerous high-speed car chase. Plaintiff contends that he was subjected to excessive force during his inevitable arrest, that law enforcement officers failed to intervene on his behalf, and that the actions of all of the named defendants resulted in the denial of his right to equal protection of the laws.

The complaint included Onondaga County, Onondaga County District Attorney William Fitzpatrick, and Onondaga County Assistant District Attorney Lauren Lapaglia as defendants, but these parties were dismissed from the action on January 10, 2012, leaving six Onondaga County Sheriff's Deputies, one Onondaga County Sheriff's Sergeant, and three City of Syracuse Police Officers remaining.

Following the expiration of the discovery period, both the County of Onondaga Defendants and the City of Syracuse Defendants (collectively "defendants") moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 on all of Fudge's

remaining claims.[2]  Although he failed to timely respond to the motions, plaintiff submitted a general request for an extension of time, which was granted by text order on June 25, 2014. Plaintiff eventually filed a tardy opposition on July 28, 2014, to which the City of Syracuse Defendants replied.  Both motions were considered on the basis of the submissions without oral argument.

## II. **BACKGROUND**[3]

On July 3, 2008, members of the Onondaga County Sheriff's Office, in conjunction with the City of Syracuse Police Department, were patrolling high-crime areas in the City of Syracuse as part of a multi-jurisdictional task force known as Operation Impact, a New York State Division of Criminal Justice initiative intended to combat "gun crime and gang violence."  County Defs.' Statement of Material Facts, ECF No. 57-17,¶ 7 ("County Rule 7.1 Stat."); City Defs.' Statement of Material Facts, ECF No. 66-7, ¶ 5 ("City Rule 7.1 Stat.").

At approximately 9:25 p.m. that evening, Deputy Shields conducted a traffic stop of a 2006 Pontica Montana because it had "dark tinted windows."  County Rule 7.1 Stat. ¶ 8; City Rule 7.1 Stat. ¶¶ 9-10.  Although the vehicle, bearing New York license plate number "EGY - 5641," initially pulled to the side of the road, the vehicle sped away when Deputy Shields exited his patrol car to approach the driver's door.  County Rule 7.1 Stat. ¶¶ 10-11;

---

[2]  Although the City of Syracuse Defendants have also asserted cross-claims against the County of Onondaga Defendants, those claims are not the subject of either pending motion.  <u>See</u> ECF No. 54.

[3]  The City of Syracuse Defendants correctly note in a reply memorandum that Fudge failed to properly respond to defendants' respective statements of material facts despite receiving warnings about the consequences of failing to do so.  <u>See</u> ECF Nos. 57, 66 (attaching this District's "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion").  Further, plaintiff's opposition papers confirm that he is aware of the summary judgment standard and its attendant consequences.  <u>See</u> ECF No. 71.  Accordingly, where a fact is cited from either of defendants' statements of material facts, that fact has either been explicitly "admitted" by Fudge in his opposition filings or a review of the record has revealed no basis to place it in genuine dispute.  <u>See</u> N.D.N.Y.L.R. 7.1(a)(3).

City Rule 7.1 Stat. ¶ 10.  Deputy Shields quickly returned to his patrol car, activated his sirens and lights, advised dispatch of the situation, and pursued the vehicle as it traveled at high rates of speed through stop signs, red traffic signals, onto and over sidewalks, the wrong way down one-way streets, and eventually into a fenced lot.  County Rule 7.1 Stat. ¶¶ 13-17; City Rule 7.1 Stat. ¶¶ 17-20.

A number of other law enforcement officers had joined in the pursuit and soon attempted to corner the vehicle in this fenced lot, but the driver avoided these additional units, accelerated through the chain link fence surrounding the lot, traveled over a sidewalk, struck a "no parking" sign post, and rammed the patrol car driven by Deputy Cox and Deputy Mendolia.[4]  County Rule 7.1 Stat. ¶¶ 18-21; City Rule 7.1 Stat. ¶¶ 20-23.  The high-speed chase then continued through various neighborhoods across the city, with the vehicle disobeying numerous traffic signals before eventually entering the grassy area of a housing complex, where it traveled over a "large dirt berm" before stopping abruptly at the edge of the complex's parking lot.  County Rule 7.1 Stat. ¶¶ 22-27; City Rule 7.1 Stat. ¶¶ 32-26.

Two occupants then exited the vehicle—the driver, later identified as Fudge, and a passenger, later identified as "Keith Lee"—and fled on foot.[5]  See County Rule 7.1 Stat. ¶¶ 27-28; City Rule 7.1 Stat. ¶ 37.  Deputy June exited his patrol car and pursued plaintiff on foot, issuing "several commands" to stop running and warning him that he would be subjected to a taser deployment if he did not comply.  See County Rule 7.1

---

[4]  The patrol car was disabled, and neither officer had any further involvement in the vehicle pursuit or Fudge's later arrest.  See County Rule 7.1 Stat. ¶ 21.

[5]  The City of Syracuse Defendants contend that Officer Metz pursued Mr. Lee and was neither present for, nor involved in, Fudge's arrest. City Rule 7.1 Stat. ¶¶ 37-51.

Stat. ¶¶ 29-30.  Plaintiff did not stop running and Deputy June deployed his taser, striking plaintiff in the center of his upper back and upper right buttock.  Id. ¶ 31.

The taser deployment caused Fudge to fall to the concrete sidewalk, where he was incapacitated for the duration of the taser's five-second cycle.  County Rule 7.1 Stat. ¶ 32.  However, plaintiff began actively resisting the efforts of "several Syracuse police officers" to arrest him.[6]  Id. ¶ 33.  When plaintiff failed to heed additional warnings to stop resisting, Deputy June activated the taser a second time.  Id. ¶¶ 34-38.  Eventually, the struggle ended and plaintiff was finally placed in handcuffs.  Id. ¶ 38.

Fudge sustained minor injuries as a result of the incident, including puncture marks from the taser probes, a contusion on the right side of his head, and an abrasion on his elbow, but refused medical treatment and was held at the Onondaga County Justice Center pending arraignment on the various criminal charges against him.  Id. ¶¶ 41-42.  Deputy McLaughlin, an evidence technician, was summoned to the Justice Center to photograph plaintiff's injuries and observed plaintiff's puncture wounds and the abrasions on his head and elbow.[7]  Id. ¶¶ 43-44.  Plaintiff was initially only provided with an ice pack for his injuries.  Id. ¶ 47.  However, he was transported to Upstate Medical University Department of Emergency Medicine for further evaluation after reporting that he had swallowed a bag of crack cocaine.  Id.  The hospital examined plaintiff and discharged him with a diagnosis of scalp hematoma, cocaine ingestion (unspecified), and hypertension (unspecified).  Id. ¶ 48.

---

[6]  Each of the City of Syracuse Defendants have submitted sworn declarations stating, in effect, that they were elsewhere when Fudge's arrest occurred.  Brown Decl., ECF No. 66-4, ¶¶ 21-25; Metz Decl., ECF No. 66-5, ¶¶38-40; Cordone Decl., ECF No. 66-6, ¶¶ 26-27.

[7]  Likewise, Deputy Himes, another evidence technician, took photographs of the cars damaged in the vehicle chase.  See County Rule 7.1 Stat. ¶ 46.

Plaintiff is currently serving a term of imprisonment resulting from his conviction on various state law charges stemming from this incident.

## III. DISCUSSION

Fudge's complaint alleges that after Deputy June tasered him, rendering him "disabled and unable to resist," he was "badly beaten, kicked in the head, face, neck, back and other body parts which caused [him] great pain." Compl. 5. Plaintiff alleges that he suffered "[a] swollen head and face, blackened eyes, [a] concussion to [his] head and other bruises and injuries." Id. Plaintiff's complaint enumerates six counts, but his first three claims—against Onondaga County, Fitzpatrick, and Lapaglia—have previously been dismissed, and counts four and six are duplicative. Accordingly, plaintiff's complaint is construed as alleging § 1983 claims for violation of his right to equal protection as well as claims for excessive force and/or failure to intervene against all of the defendants remaining in this action.

### A. Motion for Summary Judgment—Legal Standard

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Id. at 250 n.4. The failure to meet this burden warrants denial of the motion. See id. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the non-moving party. Jeffreys, 426 F.3d at 553. Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citations omitted); see also Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict"). Importantly, "[i]t is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (citations and internal quotation marks omitted). Application of this liberal standard is especially important where, as here, a plaintiff alleges violations of his civil rights. See Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191 (2d Cir. 2008) (citing McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004)).

## B. **William Jones**

Fudge identifies "William Jones" as a Deputy Sheriff employed by the Onondaga County Sheriff's Office. See generally Compl. However, Mr. Jones has never been definitively identified or even served, and Carol L. Rhinehart, Esq., counsel of record for the County of Onondaga Defendants in this action, affirms that plaintiff has already

"acknowledged that he named William Jones in error."  Rhinehart Aff., ECF No. 57-1, ¶ 12;

see also ECF No. 34 (letter from plaintiff acknowledging that William Jones was named in

error).  Here, plaintiff bore the responsibility for effectuating proper service of each named

defendant within 120 days; his "status as a pro se litigant does not excuse him from the

procedural rules of law nor the requirements of [the Federal Rules]."  Troeger v. Ellenville

Cent. Sch. Dist., 2014 WL 1302051, at *4 (N.D.N.Y. Mar. 31, 2014).  Plaintiff was notified of

these procedural requirements in response to his letter motion via a text order by the

assigned Magistrate Judge.  Accordingly, the claims against "William Jones, Deputy Sheriff,

Onondaga County" are dismissed from this suit.  See FED. R. CIV. P. 4(m).

### C. Equal Protection

The defendants contend that Fudge's equal protection claim must fail because plaintiff

has not identified any similarly situated persons who were treated differently.  County Defs.'

Mem. 12; City Defs.'s Mem. 14.[8]

"The Equal Protection Clause of the Fourteenth Amendment requires the government

to treat all similarly situated individuals alike."  Young v. Suffolk Cnty., 705 F. Supp. 2d 183,

204 (E.D.N.Y. 2010) (citing City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439

(1985).  "[T]he prototypical equal protection claim involves discrimination against people

based on their membership in a vulnerable class."  Harlen Assocs. v. Inc. Vill. of Mineola,

273 F.3d 494, 499 (2d Cir. 2001).  However, "[the Second Circuit has] long recognized that

the equal protection guarantee also extends to individuals who allege no specific class

membership but are nonetheless subjected to invidious discrimination at the hands of

---

[8]  Specific page numbers cited in this decision adopt the pagination assigned by CM/ECF.

government officials." Id. (citation omitted).  A plaintiff seeking to establish such a claim must demonstrate "that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Cinema Art Theater, Inc. v. City of Troy, 810 F. Supp. 2d 489, 498 (N.D.N.Y. 2011) (Sharpe, C.J.) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

Here, Fudge alleges that "the named defendants are all white police officers who were in part motivated by racial invidious discriminatory motives to deny [him], a black male citizen, equal protection of the laws when they used force sadistically and excessively to inflict severe physical injuries on [him]."  Compl. 7.  Plaintiff further alleges that various law enforcement officers subjected him to unspecified verbal abuse, and indicated that he "was a dumb negro, going to die tonight, and that the job would be finished at the Justice Center."  Pl.'s Opp'n 13.

These two allegations, standing alone, are insufficient to maintain an equal protection claim.  Fudge neither identifies any similarly situated individual nor attempts to explain how he was treated differently from anyone else.  "In order to state an equal protection violation under § 1983, 'it is axiomatic that plaintiff must allege that similarly situated persons were treated differently.'"  Young, 705 F. Supp. 2d at 205 (quoting Gagliardi v. Vill. of Pawling, 18 F.3d 188, 193 (2d Cir. 1994)).  Even assuming one or more of the defendants actually made such a statement to plaintiff, it is not cognizable under equal protection jurisprudence.  Accordingly, plaintiff's equal protection claim fails as a matter of law.

### D. Personal Involvement

The County of Onondaga Defendants next contend that Deputies Himes, Mendolia, McLaughlin, Shields, and Cox lack the "personal involvement" required to impose § 1983

liability and summary judgment must be entered in their favor.  County Defs.' Mem. 4-5.

Likewise, the City of Syracuse Defendants contend that Officers Brown and Cordone were

not personally involved in plaintiff's arrest and are entitled to summary judgment.  City Defs.'

Mem. 6.

"Personal involvement of defendants in alleged unconstitutional deprivations is a

prerequisite to an award of damages under § 1983."  Felix-Torres v. Graham, 687 F. Supp.

2d 38, 54 (N.D.N.Y. 2009) (Suddaby, J.) (citation omitted).  A police officer is personally

involved in the use of excessive force for purposes of a § 1983 claim where he "directly

participates in an assault, or was present during the assault with reasonable opportunity to

intercede on plaintiff's behalf yet failed to do so."  Espada v. Schneider, 522 F. Supp. 2d 544,

555 (S.D.N.Y. 2007) (citing Younger v. City of New York, 480 F. Supp. 2d 723, 732 (S.D.N.Y.

2007)).  Under the second, "failure to intervene" theory, a plaintiff must not only prove the

use of excessive force by an individual, but must also prove that the defendant who allegedly

failed to intervene:  "(1) possessed actual knowledge of the use . . . of excessive force; (2)

had a realistic opportunity to intervene and prevent the harm from occurring; and (3)

nonetheless disregarded that risk by intentionally refusing or failing to take reasonable

measures to end the use of excessive force."  Lewis v. Mollette, 752 F. Supp. 2d 233, 244

(N.D.N.Y. 2010) (citations omitted).

Here, the record reflects that:  (1) the patrol car driven by Deputy Mendolia and

Deputy Cox was disabled during the chase; (2) Deputy Shields initially executed the vehicle

traffic stop but did not participate in the later foot chase after Fudge exited his

vehicle;  (3) Deputy Himes and Deputy McLaughlin, evidence technicians, only took

photographs to document the incident following plaintiff's arrest; (4) Officer Brown was not

present for the foot chase with plaintiff; and (5) Officer Cordone arrived at the scene of the incident after plaintiff had already been handcuffed.

Fudge correctly identifies Deputy June as the individual who tasered him, but despite his allegations of being punched and kicked, he only states that he "recalls seeing between 6 to 8 officers at the scene, and 'several' officers standing around not saying or doing anything to stop the assault." Pl.'s Opp'n 11. "Assertions of personal involvement that are merely speculative are insufficient to establish a triable issue of fact." Lewis v. Murphy, 2014 WL 3729362, at *6 (N.D.N.Y. July 25, 2014) (Mordue, S.J. & Hummel, M.J.) (citation omitted); Brown v. Artus, 647 F. Supp. 2d 190, 200 (N.D.N.Y. 2009) (Kahn, J. & Peebles, M.J.) ("In the face of his express denial of knowledge or responsibility, plaintiff's conclusory allegations to the effect that defendant [ ] 'sanctioned, ratified, condoned and participated' in the assault are insufficient to raise an issue of fact and to avoid summary judgment.") (citations omitted)).

Nothing in the record places any of the above-named defendants at the scene of the struggle during the relevant time period. Because there is no indication that these individuals directly participated in the alleged assault or were present and possessed a realistic opportunity to intervene, they were not "personally involved" as required to sustain a § 1983 claim. Accordingly, plaintiff's claims against these seven defendants fail as a matter of law.

### E. Remaining Claims

This leaves Fudge's claims against Deputy June, Sergeant McCarron, and Officer Metz. The County of Onondaga Defendants contend that Deputy June's use of force was objectively reasonable under the circumstances and that Sergeant McCarron was not involved in plaintiff's arrest—and could not intervene on plaintiff's behalf—because he was

occupied with a simultaneous foot pursuit of Mr. Lee. County Defs.' Mem. at 5-7. The City of Syracuse Defendants contend that Officer Metz was also occupied with Mr. Lee's arrest. City Defs.' Mem. 12.

A claim of excessive force "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 390 (1989) (citation and internal quotation marks omitted). When considering if the degree of force used to effect a seizure was excessive, "the factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time." Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 123 (2d Cir. 2004). This requires a case-specific review of the facts and consideration of various factors, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. Further, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.

Here, Fudge led law enforcement officers on a high-speed vehicle pursuit through the City of Syracuse, violating traffic laws, damaging property, and endangering public safety before exiting the vehicle and fleeing on foot. Deputy June gave chase before ordering plaintiff to stop running, ultimately deploying his taser and causing plaintiff to fall to the concrete sidewalk. Given the circumstances, Deputy June's initial decision to deploy the taser was undoubtedly reasonable. See Hagans v. Franklin Cnty. Sheriff's Office, 695 F.3d 505, 509 (6th Cir. 2012) ("If a suspect actively resists arrest and refuses to be handcuffed,

officers do not violate the Fourth Amendment by using a taser to subdue him."); <u>McKenney v. Harrison</u>, 635 F.3d 354, 360 (8th Cir. 2011) (tasing unsecured misdemeanant who made sudden move toward window while being questioned by police did not constitute excessive force, even though he then fell out of window to his death); <u>United States ex rel. Thompson v. Vill. of Spring Valley</u>, 2006 WL 1889912, at *4 (S.D.N.Y. July 10, 2006) (finding it reasonable for officer to tase suspect who had pushed away from the officer and fled but had not been handcuffed).

However, Fudge alleges that he was then "punched and kicked in the head" while rendered helpless by this taser deployment and in the period before he was finally handcuffed. Even assuming that he made some effort to resist the officers' attempts to place him in handcuffs, the mere fact that plaintiff resisted arrest "does not give [defendants] license to use force without limit." <u>Sullivan v. Gagnier</u>, 225 F.3d 161, 166 (2d Cir. 2000); <u>see also</u> <u>Garcia v. Dutchess Cnty.</u>, –F. Supp. 2d–, 2014 WL 4116959, at *9-10 (S.D.N.Y. Aug. 21, 2014) (denying summary judgment on taser deployment where arrestee's "degree of resistance" was "limited to making it more challenging for the officers to handcuff him"). More importantly, the amount of force employed against plaintiff, and its objective reasonableness under the circumstances, simply cannot be established on this record. <u>See Marchand v. Simonson</u>, 2014 WL 1672022, at *15 (D. Conn. Apr. 28, 2014) (denying summary judgment on excessive force claim where the record failed to sufficiently establish the amount of force used to permit an evaluation of its objective reasonableness under the circumstances).

Deputy June's affidavit states only that Fudge "became combative," that "several police officers arrived to assist," and that he subjected plaintiff to a second taser deployment

for his "noncomplian[ce]" before "about four or five Syracuse police officers subdued him." June Aff., ECF No. 57-12, ¶¶ 11-13. Deputy June's "narrative report," completed shortly after the incident, indicates that he "was then assisted by Officer Metz" in this use of force to subdue plaintiff. See ECF No. 71, 25. Likewise, Sergeant McCarron's narrative report indicates that "I assisted Deputy June and other Syracuse Police Officers in the handcuffing of [plaintiff] who was resisting his arrest by swinging his arms and kicking his legs." ECF No. 57-3.

However, these reports completely lack any specific details regarding the actions taken by those who participated in Fudge's arrest. Various statements in these reports are also in direct conflict with affidavits submitted by both sets of defendants in support of their respective motions for summary judgment. For instance, Sergeant McCarron's affidavit indicates that his earlier narrative report is simply incorrect, that he was occupied with Mr. Lee's arrest during the relevant time period, and that he has a "distinct recollection of assisting . . . Officer Metz" in handcuffing Mr. Lee.[9] McCarron Aff., ECF No. 57-13, ¶¶ 12-14. Likewise, Officer Metz's affidavit also conveniently places him in a foot pursuit with Mr. Lee while plaintiff was being "subdued." Metz Decl., ECF No., ¶¶ 37-43; see also Fischer Aff., ECF No. 57-10, ¶¶ 11-17.

As the City of Syracuse Defendants correctly note in a reply memorandum, "[i]t is a physical impossibility for Officer Metz to have been in two places at once." City Defs.' Reply Mem. 9. However, Officer Metz's and Sergeant McCarron's affidavits—contrasted with the earlier narrative reports—do not, as the City of Syracuse Defendants believe, "provide[ ] a

---

[9] McCarron states that he reviewed video footage of plaintiff's arrest confirming this was an error, but this video does not appear to have been submitted for review. McCarron Aff., ECF No. 57-13, ¶¶ 10-13.

basis . . . to conclude that Officer Metz would not be a rational candidate to participate or intervene in the use of force." Id. Rather, this conflict creates a question of fact as to his location and actions during the relevant time period. Since the same physical limitation surely applies to Sergeant McCarron, his affidavit contrasted against his earlier narrative report also creates a similar question of fact.

The parties do not dispute that Deputy June was present for, and involved in, the use of force against Fudge. Evidence in the record also suggests that both Officer Metz and Sergeant McCarron were present for, and even involved in, that altercation. The presence or absence of both officers during the period of time between Deputy June's initial taser deployment and plaintiff's successful arrest, as well as the actions taken (if any) by all three law enforcement officers to "subdue" plaintiff, are material facts suitable for determination by a jury.

It is of no moment that Fudge's injuries appear to be minimal. See, e.g., ECF No. 58, 59-72 (plaintiff's medical records). Indeed, "[d]efendants are liable as long as the force used exceeded the force needed for the factual circumstances and the fact that [p]laintiff may not have sustained serious long lasting harm is not dispositive." Graham v. City of New York, 928 F. Supp. 2d at 618; see also Yang Feng Zhao v. City of New York, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009) ("[T]he Second Circuit has indicated that a very minimal injury is sufficient to trigger potential liability"). Accordingly, defendants' motions with respect to Deputy June, Sergeant McCarron, and Officer Metz will be denied.

### F. Qualified Immunity

Finally, the three remaining defendants contend they are nevertheless entitled to qualified immunity.

Where, as here, the rights at issue in circumstances confronting police officers were clearly established, "the officers will nonetheless be entitled to qualified immunity if it was objectively reasonable for them to believe their acts did not violate those rights." Zellner v. Summerlin, 494 F.3d 344, 367 (2d Cir. 2007); see also Gilles v. Repicky, 511 F.3d 239, 244 (2d Cir. 2007) (noting that Fourth Amendment violations are clearly established). "If there is no dispute as to the material historical facts, the matter of whether the officer's conduct was objectively reasonable is an issue of law to be determined by the court." Id. "If there is such a dispute, however, the factual questions must be resolved by the factfinder." Id.

Here, the parties plainly dispute what force was used to "subdue" Fudge following the initial taser deployment as well as what degree of resistance plaintiff offered during his arrest, since it would not have been objectively reasonable for the officers to believe that kicking and punching plaintiff in the head while he was rendered helpless by the taser deployment was permissible. Indeed, such conduct would clearly fall on the wrong side of the "sometimes hazy border between excessive and acceptable force." Hartman v. County of Nassau, 350 F. App'x 477, 479 (2d Cir. 2009) (summary order). Further, the parties also dispute whether Sergeant McCarron and Officer Metz were even present for plaintiff's arrest.

"Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." Marchand, 2014 WL 1672022, *15 (citation omitted). Accordingly, the three remaining defendants are not entitled to qualified immunity.

## IV. **CONCLUSION**

The record establishes that Deputies Himes, Mendolia, McLaughlin, Shields, and Cox as well as Officers Brown and Cordone were not personally involved in any of the alleged

constitutional violations and therefore all of Fudge's claims against these seven defendants fail as matter of law. However, Deputy June was indisputably involved in the force used against plaintiff during his arrest, and evidence in the record places both Officer Metz and Sergeant McCarron at the scene during the relevant time period. Whether Sergeant McCarron and Officer Metz were present during the arrest, and whether the actions or omissions of all three individuals were reasonable under the circumstances, requires a resolution of the disputed factual issues surrounding the incident.

Therefore, it is

ORDERED that

1. The County of Onondaga Defendants' motion for summary judgment is GRANTED in part and DENIED in part;

2. The City of Syracuse Defendants' motion for summary judgment is GRANTED in part and DENIED in part;

3. Plaintiff's claims against "William Jones, Deputy Sheriff, Onondaga County" are DISMISSED;

4. Plaintiff's equal protection claims are DISMISSED;

5. Plaintiff's claims against Onondaga County Sheriff's Office Deputies Himes, Mendolia, McLaughlin, Shields, and Cox are DISMISSED;

6. Plaintiff's claims against City of Syracuse Officers Brown and Cordone are DISMISSED;

7. Plaintiff's excessive force / failure to intervene claims against Onondaga County Sheriff's Deputy June, Onondaga County Sheriff's Sergeant McCarron, and City of Syracuse Officer Metz remain for trial.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  September 19, 2014.
       Utica, New York.